RED TOP DRIV-UR SELF *v.* MUNGER.

5-1760                                                320 S. W. 2d 97

Opinion delivered January 26, 1959.

*Wood & Smith,* for appellant.

*Mehaffy, Smith & Williams,* by *Robert V. Light,* for appellee.

J. SEABORN HOLT, Associate Justice.    Appellee, Munger, on October 30, 1957 executed a "Standard Rental Agreement" with Red Top Driv-Ur Self Co. Inc., owner, (at the airport in Little Rock) for the use of one of·its cars.  The above rental agreement contained these provisions, "Collision Protection.  If the box has been initialed on behalf of owner, then for an additional fee of $1 per day (with a maximum of $5 per week) owner agrees to relieve renter of all liability for collision damage to the rented vehicle referred to above while it is operated in conformity with this rental agreement, but renter shall be fully liable for all such damage if said vehicle is operated in violation of any law or this rental agreement."    Red Top initialed the box which entitled

Munger to protection. Another section of this rental agreement provides: ''The vehicle described on the reverse side hereof shall not be operated: . . . (d) By any person other than the renter who signed the rental agreement or, provided he is a qualified licensed driver, by a member of the renter's immediate family, the renter's employer, or a person driving the car pursuant to said person's usual and customary employment by the renter, and in the course of said driver's regular and usual employment for the renter.'' The facts disclose that at about 8 P. M. on November 2, 1957 Munger picked up a young lady, an employee of appellant, at her apartment, and they had dinner at the Tia-Wanna Club west of Little Rock. It appears undisputed that the young lady's employment with Red Top was concluded at 5 P. M. and that her association with Munger was unrelated to her employment. They left Tia-Wanna at about 10 P. M., driving toward Little Rock and when about a mile from Little Rock, on the way to their destination in North Little Rock, the young lady, who apparently was better acquainted with the road, took the wheel and undertook to drive, with Munger on the front seat beside her. She drove first to Levy to a drive-in where they had coffee and on leaving, — she was still driving, — a wreck occurred damaging the automobile practically beyond repair, such damages amounting to approximately $1,500. Appellant demanded payment from Munger for these damages, and upon his refusal to pay, brought the present suit. Trial before the court sitting as a jury resulted in a judgment in favor of appellee Munger and this appeal followed.

It appears that material facts are not in dispute and only a question of law is involved. Our decision must turn on the meaning and application of the word ''operated'' as used in the rental agreement. In this connection appellant says, ''The provision of the rental agreement withholding collision protection except when the automobile was being used in conformity with the agreement is perfectly clear and not susceptible to construction. The word 'operated' is limited to physical control of the automobile.''

Appellee, on the other hand, says, "The term 'operated' as employed in the rental contract is ambiguous and therefore subject to judicial construction, and the proper construction of the term is that it comprehends the directing, superintending or overseeing of the driving of the vehicle."

After a careful review of the facts presented we have reached the conclusion that the appellant's contention is correct and must be sustained. We do not agree with appellee's argument that the word "operated," in the sense used here, is ambiguous. One of the specific requirements effecting collision protection to Munger is the stipulation that it applies only when the car is being operated by the person who signed the agreement, in this instance, Munger. Clearly we think this collision protection was meant to be, and was, strictly personal, applying only to Munger and in no sense general insurance for the benefit of some unknown operator. As indicated, it is undisputed that Munger was not at the wheel of the car when the mishap occurred and it does not appear that he was advising or instructing the driver in any manner. The young lady was physically driving. She was not acting as the agent of Munger, was not his employee, and there is no contention that any family relationship existed or that Munger was not a qualified, licensed driver. Granting, however, that the word "operator" may, in a general sense, be ambiguous (there being instances where it has been used to denote the driver of the car and also instances where it referred to the person who had control of the vehicle), we hold that it is not ambiguous as used in this particular rental agreement. Subsection (d), heretofore quoted, provides that the rented vehicle shall not be operated "by any person other than the renter who signed the rental agreement or, *provided he is a qualified licensed driver,* by a member of the renter's immediate family, etc." This language certainly makes clear that the term "operator" means "driver," for one does not need a driver's license to merely sit and tell somebody else where to go. Subsection (d) clearly has reference to who may *drive* the car, and Munger's companion is

not included. Under our statutes as applied to motor vehicles, their operation on the highways, etc., Sec. 75-303 Ark. Stats. 1947 defines the word "operator" in this language: "*Operator.* Every person (other than a chauffeur) who is in actual physical control of a motor vehicle upon a highway."

In the case of *Witherstine* v. *Employers Liability Assurance Corporation,* 235 N. Y. 168, 139 N. E. 229, 28 A. L. R. 1298, there was involved an insurance policy providing for a reduced rate when the car insured was being operated by the insured himself, a situation similar in effect to that presented here. In that case the court said, "the word 'operate' is used throughout the statute as signifying a personal act in working the mechanism of the car. The driver operates the car for the owner but the owner does not operate the car unless he drives it himself. If the meaning were extended to include an owner acting either by himself or by agents or employees the provisions of the highway law would be replete with repetitious jargon."

"When the meaning of the contract appears, it is the duty of the court to give them effect even when the words have been selected by an insurance company. Construction must not extend to the creation of a new contract for the parties."

In Blashfield on automobiles we find this statement on the construction of the word 'operate.' (*Blashfield* 6, Part 1, Section 3941) ". . . if a policy distinctly limits its protection to cases of injury occurring while the owner is operating the car, personal operation thereof by the owner is contemplated, and the insurer is not liable in any other event."

"Occasionally the policy restricts the coverage in this manner in certain states of fact and contingencies, and, when the situation at the time of the accident comes within a state of fact as to which the restriction applies, there is no liability upon the insurer for operation by persons other than the named insured."

"The word 'operate' read in the light of the context of the policy and in view of the meaning attached to the word in automobile statutes, may be construed as describing the personal act of the owner in working the mechanism of the car, and hence as excluding liability when the owner is not personally driving at the time of the accident, although he is present and directing another as to the route, speed, and general manner of operation of the car, . . ."

In the case of *Galan* v. *State*, 164 Tex. Cr. Rep. 521, 301 S. W. 2d 141, The Court of Criminal Appeals of Texas used this language, "Appellant next complains of that portion of the court's charge in which he instructed the jury that they might convict if they found that the appellant did 'drive and operate' a motor vehicle on the grounds that the complaint and information charged only that he did 'operate' a motor vehicle. We hold such terms to be synonymous, and the court's charge to be proper."

And in *State* v. *Sullivan*, 146 Me. 381, 82 A. 2d 629, the Supreme Judicial Court of Maine said: "According to popular acceptance, the meaning of the term 'to operate a motor vehicle' is the same as to 'drive' it. It usually means that a person must so manipulate the machinery that the power of the motor is applied to the wheels to move the automobile forward or backward . . ."

We conclude therefore that the word "operate" as used in the rental agreement here is plain and unambiguous and means that Munger was not protected for the reason that he was not operating the car at the time the car was wrecked. Accordingly the judgment is reversed and the cause remanded with directions to proceed in a manner consistent with this opinion.

McFADDIN, ROBINSON, and JOHNSON, JJ., dissent.

SAM ROBINSON, Associate Justice, dissenting. The majority starts off by saying that Munger executed a "Standard Rental Agreement" with Red Top. True, the printed form containing the terms of the agreement be-

tween the parties, prepared by Red Top, is designated thereon as "Standard Rental Agreement." But there is no showing that such a form is actually standard. Certainly there is no indication that it is one of such wide use that it is generally understood by the public.

There is a principle of law so firmly established that it needs no citation to support it, to the effect that an ambiguous written contract will be construed more strongly against the party that prepared it. Such an ambiguity exists in the case at bar, and in my opinion the majority is departing from a principle of law that has heretofore been followed in dozens of cases.

In the fine print on the back of the written agreement is the provision that "The vehicle described on the reverse side hereof shall not be 'operated . . . By any person other than the renter who signed the rental agreement . . . '." At the time of the collision the vehicle was being driven by a young lady, at the direction of Munger, who had rented the car. Incidentally, the young lady was a regular employee of Red Top. However, she was not on duty at the time of the collision. If the provision of the contract relieving Munger from liability for damages to the automobile in the event of a collision is not applicable unless Munger actually was sitting under the steering wheel and driving the car, then the contract should have so provided in unambiguous language. It is a matter of common knowledge that the driver of a passenger automobile is not ordinarily referred to as the "operator" of the vehicle. In all fairness, did anyone ever hear of an "automobile operator"? The license to drive an automobile is called a "Driver's License." In this State, printed on the front of the license is "Arkansas Driver's License." Undoubtedly one who drives an automobile is an "automobile driver." But "driver" is not synonymous with "operator." Roget's *Thesaurus*, New Ed., p. 169, par. 10, deals with the term "Automobile driver" and gives as synonyms: "automobile driver, automobilist, autoist, motorist, chauffeur, James [slang]; truck driver, truckman, speed demon *or* racer; road hog [slang], Sunday driver [joc.]; joy-rider

[coll.]; hit-and-run driver; back-seat driver [joc.]; bus driver; taxi *or* taxicab driver; jitney driver; cabdriver, etc.'' It will be noticed that the *Thesaurus* does not give ''automobile operator'' as being synonymous with ''automobile driver,'' although just about every other term imaginable is used.

In the majority opinion it is stated: ''Clearly we think this collision protection was meant to be, and was, strictly personal, applying only to Munger and in no sense general insurance for the benefit of some unknown operator.'' The appellee, Munger, makes no contention in this case that the insurance was for the benefit of some unknown operator. It is his contention that he is the operator within the meaning of the contract and is therefore entitled to the collision protection. The majority cites Ark. Stats., § 75-303, defining ''operator'' as one who is in control of an automobile on the highway. The term as used in the statute is merely for the purpose of distinguishing chauffeurs from other drivers. If the majority is depending on that definition as applying to the case at bar, then a chauffeur who rented an automobile and had a collision would not be protected under the contract because of the fact that he was a chauffeur and not an operator.

To sustain the position that ''operator'' means ''driver,'' the majority relies heavily on the case of *Witherstine* v. *Employers' Liability Assurance Corp.*, 235 N. Y. 168, 139 N. E. 229, 28 A. L. R. 1298, where the word ''operate'' was construed as signifying a personal act in working the mechanism of the car. There was a strong dissent in the *Witherstine* case and later, in *Snyder, et al.* v. *United States Mutual Ins. Co.*, 312 Ill. App. 337, 38 N. E. 2d 540, the Illinois court approved and followed the dissenting opinion in the *Witherstine* case, pointing out that one of the common and ordinary meanings of the word ''operate'' is ''to direct or superintend the working of,'' and since the defendant insurance company had prepared the policy and used the word it should be given the broadest meaning in favor of the plaintiff and not be interpreted in its strictest sense. The *Snyder* case in-

volved a policy limitation as follows: "This policy shall be effective only while the within described automobile is being *operated* by the called Assured   .  .  ." [italics supplied]. In that case the court also pointed out that the New York court had in a later case, *Arcara* v. *Moresse,* 258 N. Y. 211, 179 N. E. 389, followed the dissent in the *Witherstine* case and not the majority opinion. In other words, the principal case relied on by the majority in the case at bar has been overruled or seriously impaired. In the *Arcara* case, in speaking of the *Witherstine* case, the New York court said: "Insofar as the quoted words carry the implication, that to 'operate' a motor vehicle, one must himself manipulate the steering wheel, they cannot be regarded as conclusively determining the significance of the word 'operation' or the word 'operating'."

In the case of *Trans-Continental Mutual Ins. Co.* v. *Harrison,* 262 Ala. 373, 78 So. 2d 917, 51 A. L. R. 2d 917 (1955), the Supreme Court of Alabama held that the word "operated" within the meaning of a restrictive endorsement on a policy of liability insurance is ambiguous under "the well established and recognized rule of construction pertinent to written instruments, particularly to policies of insurance," and that the ambiguity must be construed against the party who prepared the written contract.

In the New Jersey case of *Neel* v. *Indemnity Ins. Co. of N. A.,* 122 N. J. L. 560, 6 A. 2d 722 (1939), it is said: "The question is whether the word 'operating' as used in the policy is to be limited to the manual control by the customer personally or is comprehensive of the act of the customer's servant. Our study of the dictionary definitions and of legal usage as reflected in the books brings us to the belief that sound support may be found for the use of the word with either meaning; and this presents an ambiguity. Decisions which have construed statutes with a criminal or quasi criminal aspect rather uniformly limit the words 'operator' and 'operating' with respect to driving an automobile to the person exercising immediate physical control. So, too, some of the cases which construe contracts obviously based upon the language of

such statutes. But here we have a contract drafted by the defendant insurer independent of the statute and in the preparation of which the plaintiff had no part." The New Jersey court held that the insured was operating the automobile within the terms of the policy, even though the customer's son was driving the vehicle and the customer was not in the car at the time of the accident.

In my opinion the great weight of authority is to the effect that the word "operate" in the sense that it was used in this contract, is ambiguous, and since Red Top prepared the contract, such ambiguity should be construed more strongly in favor of Munger, the other party to the contract. As was said in the *Arcara* case, in a quotation from an earlier opinion by Judge CARDOZO (*Grant* v. *Knepper,* 245 N. Y. 158, 165, 156 N. E. 650, 652, 54 A. L. R. 845), he " 'did not abandon the car or its use when he surrendered to another the guidance of the wheel'; he was 'still the director of the enterprise, still the custodian of the instrumentality confided to his keeping, still the master of the ship' ''; he was still the operator.

For the reasons set out herein, I respectfully dissent.