**NOYES SUPERVISION, INC., Plaintiff,**

**v.**

**CANADIAN INDEMNITY COMPANY, Defendant.**

Civ. A. 78–A–1051.

United States District Court, D. Colorado.

March 20, 1980.

**434**

Kenneth Cobb, Lincoln, Neb., Anthony Zarlengo, Denver, Colo., and William A. MacNaughton, Houston, Tex., for plaintiff.

John R. Trigg and Michael W. Jones, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

In this diversity case plaintiff seeks to hold defendant liable under an insurance policy for certain damage to a gas well. Plaintiff, Noyes Supervision, Inc., is a Colorado corporation and defendant Canadian Indemnity Co. is the Canadian insurance company which issued the policy involved in this action. Defendant filed a Motion for Summary Judgment pursuant to Rule 56, Fed.R.Civ.P., on the grounds that plaintiff breached the notice condition of the policy and that the loss is not covered because of certain exclusions contained in the policy. Plaintiff has moved for summary judgment in its favor on the issues dealing with the policy exclusions and the notice condition. Plaintiff also seeks a reformation of the policy. The pertinent clauses of the policy which defendant relies on are set forth in the body of this opinion. Because some of the issues are not appropriate for summary judgment at this time, only a partial summary judgment can be granted.

At the time of the loss plaintiff was in the business of oil and gas well supervision in the United States. The company was formed by Frank Ceh and Donald Noyes. Donald Noyes was the sole shareholder of Noyes Supervision, Ltd. (Noyes, Ltd.), a Canadian company which conducted operations similar to plaintiff. In 1971, Noyes, Ltd., obtained an insurance policy entitled "Mercantile Composite Policy, MCP24343" (MCP) from Morrison & Tait. The policy was written by defendant and had been renewed periodically until August, 1976. The limit of liability is one million dollars for one accident involving damage to the property of others.

Shortly after Noyes Supervision, Inc., was formed, Don Noyes requested Reed Shaw Stenhouse, Ltd. (Reed), which had acquired Morrison & Tait, to give plaintiff the same insurance coverage with which Noyes, Ltd., had been provided. The MCP policy was about to expire, so on April 29, 1976, Reed issued a "cover note" or binder which stated that plaintiff would be added as an insured in accordance with the same terms and conditions of the MCP policy. According to the cover note, the period of coverage was May 1, 1976, to "Issuance of Renewal."

Meanwhile, Davis Oil Company (Davis) had contacted plaintiff and requested a completion supervisor for a gas well it was operating in Wyoming. In March or April, 1976, plaintiff sent an employee, Robert Allen, to the well site as the supervisor. Pursuant to instructions from Davis, Allen was supervising a "cement squeeze" on May 14, 1976. This cement squeeze, used to seal cracks or holes in the well casing, entails injecting cement under pressure into tubing within the well. The cement is forced

through the tubing and then to the outside of the casing to the cracks and holes. A service company hired by Davis was actually doing the "squeezing." Apparently, the minimum injection or flow rate required by Davis was not established and as a result the cement hardened and sealed the well. Because Allen failed to obey Davis' orders on the minimum injection rate, he was relieved of his duties.

In August, 1976, Davis filed suit against plaintiff in a Wyoming state court. Plaintiff received notice of the suit on or about August 18, and then notified Reed, who in turn notified defendant. Defendant denied coverage of the loss on the basis of certain exclusions, including one contained in the new policy which was issued to replace the MCP policy. The new policy, "Comprehensive Business Liability Policy IL9627 (IL), was dated August 3, 1976, and was sent to plaintiff at about the same time defendant received notice of the Wyoming lawsuit. The coverage period on the IL policy purports to be May 1, 1976, to May 1, 1977. This policy describes the business operations of the insured as "OILFIELD SUPERVISION, EXCLUDING PROFESSIONAL LIABILITY AND SALES OF OIL FIELD EQUIPMENT." The description on the MCP is "OILFIELD CONSULTANT (Excluding Professional Liability)."

Eventually the Wyoming lawsuit was settled and a consent judgment was entered against plaintiff here for $1.84 million plus costs. Plaintiff instituted this action and asserts three causes of action—breach of contract by defendant, negligence of Reed and defendant in failing to obtain proper coverage, and reformation of the IL policy to conform to the MCP. If it is ultimately determined that defendant insured the loss of the well, plaintiff has no negligence action against defendant. Since the alleged negligence of Reed and defendant involves factual questions inappropriate for summary judgment, I do not rule on those claims. The parties agreed at the hearing on the summary judgment motions that Colorado

law will govern the effect of the insurance policies, and I so ruled. Defendant contends that Canadian law governs the legal relationship between Reed and itself. Since that relationship is relevant to the negligence claims only (particularly, whether defendant can be held liable for Reed's negligence), I have no need to decide at this time the governing law on that aspect of the case.

### THE POLICIES

The MCP policy expired on May 1, 1976, but the cover note was issued April 29 and purported to insure plaintiff in accordance with the terms of the MCP policy from May 1, 1976, to the issuance of the renewal policy. The renewal, or IL policy, was written and issued *after* the incident at the oil well, and contains basically the same terms as the MCP, with the exception of the new Endorsements 8 and 4. Endorsement 4 deletes certain exclusions from the policy with respect to work carried out in Canada, thus it has no bearing on this case. Endorsement 8 of the IL policy excludes coverage of loss or damage to any gas well worked on by the insured, so if that endorsement is effective the Davis well is not covered. The exclusions and notice condition relied upon by defendant, with the exception of Endorsement 8, are contained in both the MCP and IL policies, and are identical.

The parties agree that the IL policy, not the MCP, should govern the loss, but plaintiff contends it should be reformed to the same terms as the MCP. The reformation of the IL policy would in effect delete Endorsement 8. I find that the MCP policy is the effective policy for the damage because the cover note made it effective for the date the injury occurred. However, if I am bound by the position of the parties as stated by counsel in open court, I would hold that the IL policy is the effective contract, and would declare Endorsement 8 to be void.[1] The general rule is that an insurer is bound by the greater coverage in an earlier policy where the renewal contract is

---

1. Plaintiff has asked for either a reformation of the IL policy or a declaration that Endorsement 8 is void. Both remedies achieve the same result.

issued without notifying the insured of the change in coverage. *Government Employees Insurance Co. v. United States*, 400 F.2d 172 (10th Cir. 1968). Because it is clear that Endorsement 8 was not called to plaintiff's attention until after the loss, the insured cannot be bound by it. In fact, the endorsement was not even added to the policy until some time after the loss.

## THE NOTICE CONDITION

One of the conditions of the policy is that the "Insured shall give to the Company or its duly authorized agent, immediate written notice with all available particulars of any occurrence involving . . . damage to property of others and of any claim made on account thereof. . . ." Defendant contends that plaintiff knew of the accident at the well shortly after it occurred, but did not notify defendant until almost three months later. Defendant argues that the delayed notice constitutes a breach of the insurance contract and excuses defendant's performance.

 As I ruled at the hearing, I cannot decide this issue on a Motion for Summary Judgment; evidence is required for a resolution. Plaintiff apparently notified Reed of Davis' lawsuit at the time it received notice, but it is not clear whether plaintiff had reason to give notice of the loss before that time. In Colorado, delayed notice to an insurer is not a breach of the contract if the insured has a justifiable excuse. *Certified Indemnity Co. v. Thun*, 165 Colo. 354, 439 P.2d 28 (1968), and according to the Colorado Court of Appeals, a reasonable belief in nonliability and that no claim would be asserted is an excuse for delayed notice. *Barnes v. Waco Scaffolding and Equipment Co.*, 589 P.2d 505 (Colo.App. 1978). The issues raised here are inappropriate for summary judgment, thus the parties' motions concerning the notice condition are denied.

## THE "CARE, CUSTODY OR CONTROL" EXCLUSION

[5] According to exclusion 6b, coverage does not apply to

[a]ny . . . property used by, or in the *care, custody or control of the Insured* other than with respect to liability assumed under any sidetrack or sidewalk crossing agreement or elevator or escalator agreement. (Emphasis added.)

Defendant argues that plaintiff was hired as an on-site completion supervisor, that Allen, plaintiff's employee, was selected to serve in that capacity, and that Allen was the only representative of Davis on the site. According to defendant, Allen was expected to be the first person on the site and the last to leave each day, and even though Allen was directing the activities pursuant to Davis' instructions, Allen was entrusted with the care and/or custody, and sometimes control of, the well. Thus exclusion 6b effectively excludes coverage of the Davis well under defendant's interpretation.

Plaintiff naturally disagrees with defendant's interpretation and application of the "care, custody or control" clause, and contends that defendant's theory would effectively wipe out any coverage under the policy. Because Allen was not actually performing the cement squeeze, and was in daily communication with Davis' personnel, who were directing his activities, plaintiff argues that Davis had the actual care, custody and control of the well. Plaintiff also contends that the clause does not apply because the well is real property and not chattel property.

None of the cases construing similar "care, custody or control" clauses cited by the parties are factually similar to the case at bar. Those cases do support general rules,[2] however, general propositions alone are not helpful. In my opinion, no one factor is controlling; rather, the court should examine all the facts and circumstances, as well as the intent of the parties

2. *See, e. g., Meadows & Walker Drilling Co. v. Pacific Employers Indemnity Co.*, 324 F.Supp. 282 (S.D.Tex.1971); *Royal Indemnity Co. v.*

*Smith*, 121 Ga.App. 272, 173 S.E.2d 738 (1970); and Annot., 62 A.L.R.2d 1242 (1958).

to the contract. Thus I believe the determination of the effect of the exclusion is not suitable for a Motion for Summary Judgment. I must await the evidence presented at trial. The parties' motions on this issue must be denied.

## THE UNDERGROUND WORK EXCLUSION

Exclusion 7(a) of the policy excludes coverage for the "collapse of, or structural injury to any building, structure, work or installation due to excavation, pile driving, caisson work, or any other work below the surface of the ground." This clause is open to several interpretations. Defendant's position is that it excludes all property damage resulting from any work below the surface of the ground. Defendant also contends the damaged well is within the exclusion because the well is a work or installation which was damaged by work below the surface of the ground. I disagree with both interpretations.

▮ In the clause quoted above, the specific words, "excavation, pile driving, caisson work," are followed by the general words, "or any other work below the surface of the ground." Under the doctrine *ejusdem generis*, where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. *Martinez v. People*, 111 Colo. 52, 137 P.2d 690 (1943); *Hartford Accident and Indemnity Co. v. Crider*, 392 F.Supp. 162 (N.D.Ill.1974). This rule, which has been applied to statutes and insurance policies, is based on the principle that if the drafter had intended the general words to be used in their unrestricted sense, he would not have mentioned the particular things or classes of things, which would in that event become mere surplusage. *Martinez v. People, supra.* If the insurer had intended to exclude all property damage resulting from work below the surface of the ground, as defendant argues, then the drafter could have used that very same unrestrictive phrase instead of enumerating the particular types of injury excluded.

The phrase "any other work below the surface of the ground" cannot mean "*all* work below the surface of the ground." Rather, the phrase is restricted by the specific words preceding it, and must apply to work which is of the nature of excavation, pile driving, or caisson work. Thus I find that the clause excludes structural injury to a work or installation due to excavation, pile driving, caisson work, or any work which is of the nature of excavation, pile driving, or caisson work. In applying this interpretation to the undisputed facts, the damage to the gas well is not excluded. A service company was injecting cement into the well under Allen's supervision, and the cement hardened in the wrong place at the wrong time. There was no collapse or any digging or excavation type work. No piles were being driven. Injecting cement, even though it is going underground, is not an operation similar to the types of work enumerated. Even assuming that the hardened cement is a structural injury, and the well is a work or installation, the exclusion does not apply in this case. Thus plaintiff's Motion for Summary Judgment on this issue is granted.

## THE EXCLUSION OF PROFESSIONAL SERVICES

▮ Exclusion 5 of the policy states that coverage does not apply to the "rendering of professional services or the omission thereof." If Allen was rendering professional services at the time the damage occurred, defendant cannot be held liable under the policy. Professional services are not defined in the contract.

The Eighth Circuit, in *Horn v. Burns and Roe*, 536 F.2d 251, 255 (1976), said that the terms "professional negligence" and "professional services" in a Nebraska statute of limitations were "directed to acts of those engaged in occupations applying specialized knowledge and intellectual skills to the performance of their duties." *See also Swassing v. Baum*, 195 Neb. 651, 656, 240 N.W.2d 24, 27 (1976). Traditionally, professional services has meant "work requiring knowl-

edge of an advanced type in a field of learning or science customarily acquired by a prolonged course of study of specialized intellectual instruction as distinguished from training in the performance of routine, manual, or physical processes." *Gulf Insurance Co. v. Gold Cross Ambulance Service Co.*, 327 F.Supp. 149, 152 (W.D.Okl. 1971). In interpreting "professional services" as contained in a medical malpractice insurance contract, the Supreme Court of Nebraska ruled that the

> act or service must be such as exacts the use or application of special learning or attainment of some kind. The term "professional" in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. (citations omitted) In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself. (citations omitted)

*Marx v. Hartford Accident and Indemnity Co.*, 183 Neb. 12, 157 N.W.2d 870, 871–72 (1968). In determining whether Allen was performing a professional service at the time of the loss, the court must focus on his conduct during the cement squeeze, although his overall responsibilities are relevant to the determination.

Plaintiff was hired by Davis as a gas well completion supervisor and Allen was sent to the site in that capacity. Allen has also been termed a consultant and completion foreman, but as stated above, it is the act itself which is important, not Allen's title. Allen was in daily communication with Davis, particularly Hugh Quinn, the district superintendent. Allen was to follow the orders and instructions given him by Quinn. If Allen believed the instructions were inappropriate, he had to request a modification. Only in emergencies could Allen deviate from the instructions. Quinn testified at his deposition that Allen had very little discretion.[3] It appears that Allen spent most of his time coordinating the activities of the service companies hired by Davis and relaying instructions to the people actually doing the work on the well.

On the date of the accident, Allen was ordered to proceed with the cement squeeze, but *only* if a certain flow rate could be established. (Emphasis supplied) The service company injecting the cement did not establish the required minimum flow rate, but Allen decided to proceed nonetheless. It now appears that the fatal mistake was Allen's failure to follow his orders.

I find that Allen was not a professional, nor was he performing a professional service. There is no evidence that his occupation is generally accepted as a profession. His "expertise" was developed through experience on oil and gas wells, *not* through a prolonged course of study of specialized intellectual instruction. While it may be possible that a person could become a "professional" after many years of experience in a certain occupation, Allen is not such a person. He made only routine decisions in supervising the completion operations. His decision to proceed with the cement squeeze was not a professional act as that term is generally understood. Thus the professional services exclusion does not apply to the cement squeeze accident, and I will grant plaintiff's Motion for Summary Judgment on this issue.

## CONCLUSION AND ORDER

In summary, Endorsement 8 of the IL policy is declared void and of no force or effect. The exclusions dealing with under-

---

3. Quinn also considered the services rendered by Allen were professional in nature, but his opinion on the issue is not controlling.

ground work and professional services do not operate to exclude coverage of the damaged gas well. I do not decide at this time whether the notice condition or the "care, custody or control" exclusion excuses defendant's liability under the policy, nor do I decide whether defendant was negligent if the policy does not cover the damage to the well. Those issues must be dealt with at trial.

Accordingly, it is

ORDERED that defendant's Motion for Summary Judgment be, and the same hereby is denied. It is further

ORDERED that plaintiff's Motion for Summary Judgment on the issue involving Endorsement 8 of the IL policy be, and the same hereby is, granted. It is further

ORDERED that plaintiff's Motion for Summary Judgment on the issues involving the professional services exclusion (exclusion 5) and the underground work exclusion (exclusion 7a) be, and the same hereby is, granted. It is further

ORDERED that plaintiff's Motion for Summary Judgment on the issues involving the notice condition and the "care, custody or control" exclusion (exclusion 6b) be, and the same hereby is, denied.