**LINCOLN GENERAL INSURANCE COMPANY, a Pennsylvania insurance company, Plaintiff–Appellee,**

v.

**Julie BAILEY, individually, and as personal representative for the Estate of Brandon Magnuson, Defendant–Appellant.**

No. 08CA0371.

Colorado Court of Appeals, Div. II.

May 14, 2009.

Hall & Evans, LLC, Peter F. Jones, George Koons, III, Malcolm S. Mead, Denver, Colorado, for Plaintiff–Appellee.

King & Greisen, LLP, Paula Greisen, Laura E. Schwartz, Denver, Colorado; The Overton Law Firm, Richard J. Gleason, Thomas J. Overton, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Julie Bailey, individually and as personal representative for the Estate of Brandon Magnuson (the claimants), appeal from the entry of summary judgment and dismissal of their claims against Lincoln General Insurance Company (the insurer). We affirm.

## I. Background

Raymond Juhl (the insured) rented a car from a rental car agency at Denver International Airport. Primary liability insurance coverage ($25,000 limit) was provided by the rental car agency. The insured purchased supplemental liability insurance coverage (SLI) through the agency but from the insurer with a policy limit of $1,000,000. It is the availability of the SLI coverage that is at issue here.

While operating the rental vehicle, the insured led police officers from multiple jurisdictions on a 20–mile high-speed chase with speeds exceeding 100 miles-per-hour, ending when the insured collided head-on with the claimants' vehicle. The collision severely injured Julie Bailey and killed her son, Brandon Magnuson.

The insured later pleaded guilty to five felonies: second degree murder, first degree assault-extreme indifference, possession of a controlled substance with intent to distribute, vehicular homicide, and vehicular assault-reckless. The insured assigned all of his claims, if any, against the insurer to the claimants.

With respect to insurance coverages, the rental agreement stated:

H. Renter's Third Party Liability Responsibility: . . . .

2. . . . SLI provides You with protection against third-party auto liability claims as outlined below:

A. [The rental car agency] will protect You against third party liability claims arising out of the use or operation of the Vehicle for: (i) Bodily injury or death of another . . . and (ii) Property damage other than to the Vehicle. This protection is limited to an amount equal to the minimum limits specified by the compulsory insurance or financial responsibility laws relating to automobile liability insurance in the state in which the Vehicle is rented and shall be referred to as Primary Protection; and

B. SLI provides You with a separate policy providing excess coverage against such claims for the difference between the Primary Protection and a maximum combined single limit of $1,000,000.00 (US) per occurrence for bodily injury, including death and property damage, for other than the Vehicle while the Vehicle is on rent to You.

. . . .

3. You understand SLI is void if You violate the terms of the Agreement. You understand SLI is subject to other specific exclusions which are summarized on the separate SLI brochure which is available at the rental counter.

The prohibitions that affected the availability of insurance listed in the rental agreement included:

E. WHAT ARE PROHIBITED USES OF THE VEHICLE?

THE VEHICLE MAY NOT BE USED: . . . (3) IN A RACE OR SIMILAR CONTEST . . .; (4) FOR ANY ILLEGAL PURPOSES, OR IN THE COMMISSION OF A CRIME THAT COULD BE CHARGED AS A FELONY; (5) WHILE THE DRIVER IS UNDER THE INFLUENCE OF ALCOHOL OR DRUGS; . . . (7) TO INTENTIONALLY CAUSE DAMAGE, OR DAMAGE THE VEHICLE BY WILLFUL, RECKLESS OR WANTON MISCONDUCT. . . .

**ANY PROHIBITED USE OF THE VEHICLE VIOLATES THE AGREEMENT AND VOIDS OR DEPRIVES YOU OF BENEFITS, PROTECTION AND OPTIONAL COVERAGES, IF ANY, TO**

WHICH YOU WOULD HAVE OTHERWISE BEEN ENTITLED UNDER THIS AGREEMENT.

(Emphasis in original.)

The insurer filed a declaratory judgment action naming the insured and the claimants as defendants, seeking a declaration that there was no liability coverage for the collision under the SLI. The claimants then filed an action against the insurer seeking damages and asserting claims for breach of contract, bad faith, and violations of the Colorado Consumer Protection Act (CCPA). The two actions were consolidated by the trial court.

The claimants also filed a personal injury and wrongful death action against both the insured and the rental car agency. The trial court entered judgment against the insured in the amount of $2,034,133. The rental car agency settled with the claimants for the base policy liability insurance limits of $25,000.

The insurer filed a motion for partial summary judgment in this action, arguing that the following exclusions precluded coverage: "the commission of a crime that could be charged as a felony" (the crime exclusion); "to intentionally cause damage"; "while the driver is under the influence of alcohol or drugs"; and "in a race or similar type contest." The insurer also filed a separate motion directed at the CCPA claim. The claimants filed a cross-motion for partial summary judgment on their claims for breach of contract and bad faith, arguing that the prohibitions and exclusions were ambiguous and violated public policy doctrines of reasonable expectations and unconscionability.

The trial court granted the insurer's motion for partial summary judgment based on the crime exclusion and denied the claimants' cross-motion. This appeal followed.

## II. Standard of Review

We review an order granting summary judgment de novo. *Brodeur v. Am. Home Assurance Co.,* 169 P.3d 139, 146 (Colo.2007). Summary judgment is appropriate only when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.;* C.R.C.P. 56. We also review the interpretation of insurance contracts de novo. *Allstate Ins. Co. v. Huizar,* 52 P.3d 816, 819 (Colo.2002).

Because the trial court limited its conclusions to the crime exclusion, we likewise limit our analysis and discussion to that exclusion.

## III. Doctrine of Reasonable Expectations

The claimants' first contention is that the crime exclusion violates the insured's "reasonable expectations" and is therefore void. We disagree.

A term is ambiguous when it is reasonably susceptible of more than one meaning. *Carlisle v. Farmers Ins. Exch.,* 946 P.2d 555, 556 (Colo.App.1997). However, if insurance policies are clear and unambiguous, they require no construction or interpretation and are to be enforced as written. *Cary v. United of Omaha Life Ins. Co.,* 91 P.3d 425, 427 (Colo. App.2003), *rev'd on other grounds,* 108 P.3d 288 (Colo.2005).

In our view, the crime exclusion is clear, unambiguous, and expressly excludes SLI coverage in this instance. Therefore, we need not construe or interpret it.

The claimants base their argument on the doctrine of reasonable expectations. However, that doctrine is an interpretative tool used to resolve an ambiguity and preserve the intention of the parties. *Dupre v. Allstate Ins. Co.,* 62 P.3d 1024, 1028 (Colo. App.2002). The claimants argue that the doctrine of reasonable expectations applies to unambiguous insurance contracts, citing *State Farm Mutual Automobile Insurance Co. v. Nissen,* 851 P.2d 165, 166 (Colo.1993); *Simon v. Shelter General Insurance Co.,* 842 P.2d 236, 239 (Colo.1992); and *Davis v. M.L.G. Corp.,* 712 P.2d 985, 991 (Colo.1986). Of the three, only the last mentions or discusses reasonable expectations. That case involved an intoxication exclusion to collision coverages. In *Davis,* the supreme court set forth the trial court's findings, including that the location, color, and print size of the exclusion amounted to a "concerted effort" to discourage persons from reading it. The cus-

tomer was involved in a one-vehicle accident while intoxicated, and the rental car company sued for damages to the vehicle. The case turned not on interpretation of an ambiguous contract but on unconscionability based on the remote placement of the exclusions to the comprehensive coverage in the rental agreement. The only mention of reasonable expectations in *Davis* is in a footnote in which the court discusses ambiguity, not unconscionability. 712 P.2d at 990 n. 6. We also note that collision coverages are almost universally understood to be no-fault coverages.

Therefore, we conclude the crime exclusion in the rental agreement is clear, unambiguous, and the doctrine of reasonable expectations has no application here.

## IV. Public Policy

The claimants further argue that the crime exclusion violates public policy and is, therefore, void and unenforceable. We disagree.

■ Terms contrary to public policy are void. *Aetna Cas. & Surety Co. v. McMichael*, 906 P.2d 92, 100 (Colo.1995). The claimants argue that the crime exclusion violates sections 10–4–620 and 10–4–623(1), C.R.S. 2008. Section 10–4–620 provides as follows:

Subject to the limitations and exclusions [not here present], the basic coverage required ... is legal liability coverage for bodily injury or death arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of twenty-five thousand dollars to any one person in any one accident and fifty thousand dollars to all persons in any one accident and for property damage arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of fifteen thousand dollars in any one accident.

Section 10–4–623(1) provides as follows:

The coverage described in section 10–4–620 may be subject to conditions and exclusions that are not inconsistent with the requirements of this part 6.

■ An unambiguous clause may be void and unenforceable if it violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage." *Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 516

(Colo.App.1996) *(Juniel)* (quoting *Farmers Ins. Exch. v. Dotson*, 913 P.2d 27, 30 (Colo. 1996)). Sections 10–4–620 and 10–4–623(1) deal with mandated minimum liability coverages and have no application here because the exclusion applies to supplemental coverage that is in addition to, and separate from, the mandatory coverage.

In *Juniel*, a division of this court held a crime exclusion in a homeowner's policy did not violate public policy. There, the insured homeowner, armed with a pistol, returned to a continuing dispute with a neighbor. During a struggle with the neighbor, the insured drew the pistol, which discharged and seriously injured the neighbor. The homeowner pleaded guilty to felony second degree assault and misdemeanor menacing. The liability coverage excluded bodily injury or property damage resulting from a criminal act or omission.

The division stated, "Here, we perceive no violation of public policy because, as discussed, the policy's coverage grant and exclusion clause are consistent, and the criminal act exclusion does not eviscerate the grant clause, but merely excludes a reasonable subset of injuries—those resulting from criminal acts." 931 P.2d at 516.

■ The claimants argue that Colorado has a strong public policy to compensate innocent victims. This expansive reading is premised on section 42–7–102, C.R.S.2008, which is a legislative declaration prefatory to the Motor Vehicle Financial Responsibility Act that requires, among other things, the insuring of vehicles with minimum coverages and provides sanctions for the failure to do so. That Act does not regulate insurance companies, coverages, or exclusions; it regulates and provides for criminal and administrative sanctions against owners and operators of vehicles who fail to comply with the insurance requirements it establishes.

The claimants have not cited any case holding that crime exclusions violate public policy. Our research indicates the contrary to be true. *See Campbell Contracting Co. v. Maryland Cas. Co.*, 21 F.2d 909 (4th Cir. 1927); *Hooper v. Allstate Ins. Co.*, 571 So.2d 1001 (Ala.1990); *Cary v. Allstate Ins. Co.*, 78

Wash.App. 434, 897 P.2d 409 (1995), *aff'd,* 130 Wash.2d 335, 922 P.2d 1335 (1996).

We conclude that the crime exclusion does not violate the public policy of the State of Colorado.

## V. Unconscionability

The claimants also argue that the crime exclusion is unconscionable. Again, we disagree.

■ Courts will not enforce an unconscionable contract. *Univ. Hills Beauty Acad. Inc. v. Mountain States Tel. & Tel. Co.,* 38 Colo.App. 194, 197, 554 P.2d 723, 726 (1976). In *University Hills,* the division, quoting *Carlson v. Hamilton,* 8 Utah 2d 272, 332 P.2d 989, 990 (1958), provided a definition of unconscionability, stating:

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fair[-]minded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

*Univ. Hills,* 38 Colo.App. at 197, 554 P.2d at 726.

■ Courts consider several factors in determining unconscionability, including: (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7)

the circumstances surrounding the formation of the contract, including setting, purpose, and effect. *Davis,* 712 P.2d at 991.

In *Davis,* discussed above, the driver of a rental car was intoxicated when he destroyed the car by hitting a telephone pole. During the rental car transaction, the driver purchased a physical damage waiver (PDW). After the accident, the rental car agency sued the driver to recover its losses. The driver raised the PDW as a defense, while the company pointed out the exclusion against driving under the influence in the PDW.

In *Davis,* the court concluded that the PDW was restricted in an unconscionable manner, stating:

> *(1) It was [the driver's] intention in paying for the property damage waiver to relieve himself of collision damage responsibility. (2) A "normal" person renting a car and signing this kind of agreement would be led to believe that by paying an extra $4 per day he would be "covered" in the event of a collision, regardless of whether he was under the influence of alcohol.* (3) [The rental car company's] rental agent had never observed any of her customers read the reverse side (page 1) of the agreement. (4) The exceptions to the physical damage waiver were never brought to [the driver's] attention although certain other clauses on the front of the document, such as that referring to the customer's responsibility for parking and traffic violations, were. (5) The combination of the color and size of the print "almost makes it impossible" to read the back of the agreement. (6) By using the type of form it did, with its "off-color," small print and its atypical pagination, [the rental car company] made a "concerted effort" to discourage persons from reading the back of the form.

*Id.* at 992 (emphasis added).

Here, a standardized agreement was used. The insured and the insurer had unequal bargaining power. It appears that the insured would have been afforded the time, but neither was encouraged nor chose to read the policy. The exclusions were not in fine print,

but were, instead, in capital letters with a section in boldface print. Excluding criminal acts from coverage is commercially reasonable. The rental transaction occurred early in the morning, approximately 2 a.m., at an airport.

The claimants argue that the trial court failed to consider the circumstances surrounding the transaction, including that the rental car agency clerk selling the insurance to the insured incorrectly described the coverage and failed to identify any prohibitions or exclusions; the insured failed to review the rental agreement and was not encouraged to do so by the clerk; the rental agreement was a folded pamphlet with small print and was given to the insured inside a sleeve; the transaction lasted approximately five or six minutes; the clerk told the insured he was covered for basically everything; the denial of coverage violated the insured's reasonable expectation of coverage, as testified to by the insured; and the insurer's general counsel allegedly warned the insurer of the possible invalidity of the contracts and its liability.

We conclude these factors are not entitled to great weight here because, according to the testimony, they are common in the industry and meet the needs and expectations of both parties. Travelers at a destination airport are characteristically tired, impatient, and in a hurry. Therefore, they may rarely read the vehicle rental agreements or insurance policies. In addition, most travelers are not sophisticated in reading contracts, much less insurance policies. Indeed, some rental agencies have programs that permit customers to pick up vehicles without meeting a clerk, much less discussing the terms of the rental agreement and insurance coverages with anyone. This method of operation is apparently to the benefit of, and meets the expectations of, both parties—the customer who is tired and hurried, and the vehicle rental vendor, who wishes to optimize its services to its customers with limited space and staff. Therefore, in our view, the lack of sophistication of the customer or the agent, as well as the failure to read or comprehend

the exclusions to the coverages, are common in the vehicle rental industry, particularly at airports and, perhaps more so, as here, in the early morning hours. Thus, we do not give any significant weight to those considerations in determining unconscionability.

■ We conclude that the rental agreement was not unconscionable. In fact, it appears that criminal exclusions are common in liability insurance coverages. *See Juniel; see generally Philadelphia Indem. Ins. Co. v. Carco Rentals, Inc.*, 923 F.Supp. 1143, 1152–53 (W.D.Ark.1996) (intoxication exclusion did not violate public policy and was not unconscionable); *T.H.E. Ins. Co. v. Dollar Rent–A–Car Systems, Inc.*, 900 So.2d 694, 696 (Fla. Dist.Ct.App.2005) (intoxication exclusion valid and case remanded for determination of insured's intoxication); *cf. Philadelphia Indem. Ins. Co. v. Barerra*, 200 Ariz. 9, 21 P.3d 395 (2001) (finding, among other things, that the brochure and rental agreement were ambiguous because one described the SLI as primary insurance and the other described it as excess insurance; therefore, holding that the intoxication exclusion in the rental policy violated the doctrine of reasonable expectations); *Ryan v. Knoller*, 695 A.2d 990, 994 (R.I.1997) (intoxication exclusion violated public policy because it applied only to mandated minimum coverage); *see also*, 7 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 108:4, at 10–12 (1997).

Therefore, we conclude that the crime exclusion was not unconscionable.

## VI. Remaining Issues

■ Having so concluded, we need not address whether the trial court erred in limiting its inquiry to the vehicle rental agreement when granting summary judgment on the claimants' CCPA claim, because we have necessarily concluded there was no deceptive trade practice as contemplated by that statute; in dismissing the claimants' bad faith and breach of contract claims, because we have necessarily concluded that there was no breach of contract; and in not addressing the

insurer's argument that the *Bashor*[1] agreement was invalid.

The judgment is affirmed.

Judge CASEBOLT and Judge CONNELLY concur.

---

1. *See Bashor v. Northland Ins. Co.*, 29 Colo.App. 81, 480 P.2d 864 (1970). An agreement by which an insured assigns his, her, or its claims against an insurer to a third-party, typically a judgment creditor, in exchange for a covenant not to execute on the insured's assets. *Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 431 (Colo. 2008).