2015 IL App (1st) 142169

No. 1-14-2169

FIFTH DIVISION
September 30, 2015

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| ROBERT LYTLE, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CH 22846 |
| | ) | |
| COUNTRY MUTUAL INSURANCE COMPANY, | ) | Honorable |
| | ) | Thomas Allen, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Robert Lytle challenges the trial court's dismissal of his second amended complaint alleging breach of contract and seeking costs and penalties against defendant Country Mutual Insurance Company (Country Mutual). The trial court found that there was no genuine issue of material fact and the clear and unambiguous terms of the insurance policy established that Lytle was not entitled to replacement costs because he never made any repairs or replacements. For the reasons that follow, we affirm the judgment of the trial court.

¶ 2                                   I.  BACKGROUND

¶ 3     In February 2011, plaintiff Lytle purchased a homeowner's insurance policy from

defendant Country Mutual to insure his home in Elmhurst, Illinois. The home was built around 1903. On June 21, 2011, Lytle discovered damage to his home as a result of a severe storm and shortly thereafter made a claim to Country Mutual for insurance proceeds.

¶ 4     The policy contained a depreciation holdback provision, which provided that the insurer would not pay more than actual cash value until the actual repair or replacement was complete. Furthermore, the insured could choose to accept actual cash value instead of replacement cost. If the insured elected to accept actual cash value, he would have one year from the date of the loss to repair or replace the damaged property and request the difference between the actual cash value and the replacement cost.

¶ 5     Lytle hired an insurance adjuster to represent him in the claims process. On August 25, 2011, Country Mutual informed Lytle's adjuster that Country Mutual's adjuster did not have authority to make any verbal agreements or commitments on behalf of Country Mutual, all agreements must be in writing, and Country Mutual would not waive any of the policy requirements concerning the insured's duties.

¶ 6     On August 31, 2011, Country Mutual issued to Lytle an actual cash value payment of $42,911.84. On October 21, 2011, Country Mutual sent Lytle a letter advising him that his claim remained open; Country Mutual was waiting—in accordance with the depreciation holdback provision of the policy—for the work to be completed; and Lytle's one-year date to replace or repair the damaged property and request the difference between actual cash value and replacement cost would expire on June 21, 2012. On January 21, 2012, Country Mutual sent Lytle another letter containing this same information.

¶ 7     Lytle's adjuster negotiated with Country Mutual to increase the amount of the actual cash value payment to include damage to the foundation. The parties reached an agreement on this

matter, and, on January 24, 2012, Country Mutual issued Lytle a supplemental actual cash value payment of $16,024.70.

¶ 8    On April 24, 2012, Lytle's adjuster notified Country Mutual that the repair and construction process was at a standstill because the Village of Elmhurst required necessary upgrades under its building code. The adjuster stated that he could not compel the Village to put its upgrade requirements in writing and the Village suggested that the parties meet at the property instead.

¶ 9    On May 15, 2012, Lytle's adjuster wrote Country Mutual and suggested that it contact village representatives and meet them at the jobsite. In a June 18, 2012 letter to Country Mutual, Lytle's adjuster complained that Country Mutual's explanations were not specific. The adjuster also referred to a demand by Lytle in October 2011 for an appraisal and Country Mutual's response that the demand was premature.

¶ 10    On June 11, 2012, Country Mutual wrote Lytle, informing him that it could not grant an extension on his claim and his one year period in which to complete the repairs would expire on June 21, 2012.

¶ 11    In a June 18, 2012 letter to Country Mutual, Lytle's adjuster complained that Country Mutual would not attend meetings with village representatives, explain its prior correspondence, or name an appraiser.

¶ 12    Country Mutual denied Lytle's request for additional payment of the depreciation holdback, and Lytle filed suit. In his second amended complaint, Lytle sought damages, alleging Country Mutual breached the insurance contract by failing to pay the replacement costs and additional living expenses. Lytle also sought attorney fees, costs and penalties pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)), alleging Country Mutual

engaged in acts of bad faith. Lytle did not request an appraisal or any type of equitable relief.

¶ 13    Country Mutual filed its answer and affirmative defenses and thereafter moved for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2012)). Country Mutual argued that there was no genuine issue of material fact to be determined because Country Mutual paid Lytle his actual cash value payment; the policy provided that Lytle had one year to complete the property repairs and request the difference between the actual cash value paid and the replacement costs necessary to repair the storm damage; and Lytle did not complete any repairs or replacements within the one year period. Moreover, the additional amounts Lytle sought were excluded building ordinance costs, which Lytle never actually incurred. Attached to the motion were the relevant pleadings, a copy of the policy, evidence of payment of the actual cash value, an affidavit from Country Mutual's claims handler, and correspondence between the parties regarding the necessity of completing the repairs within one year from the date of loss.

¶ 14    In his response, Lytle argued there were issues of fact concerning whether Country Mutual breached its duty of good faith and fair dealing and violated section 155 of the Insurance Code by failing to meet with representatives from the village and not abiding by the appraisal provision of the policy.

¶ 15    On June 11, 2014, the trial court held a hearing on Country Mutual's motion and granted summary judgment in favor of Country Mutual. The court found that Lytle's request for an appraisal related solely to a dispute over coverage, which was not subject to the appraisal provision of the policy. The court also found that Lytle had negotiated a settlement of the actual cash value payment, failed to timely complete repairs or replacements, and did not incur any building code upgrade costs. Lytle timely appealed.

¶ 16                                II.   ANALYSIS

¶ 17     "Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   (Internal quotation marks omitted.)   *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 460-61 (2010).   We review a grant or denial of a summary judgment *de novo*.   *Id*. at 461.   A reviewing court's function in reviewing a trial court's entry of summary judgment is to ensure that no genuine issue of material fact was raised and to determine whether the judgment was correctly entered as a matter of law.   *Comtrade, Inc. v. First National Bank of Highland Park*, 146 Ill. App. 3d 1069, 1072-73 (1986).   A nonmoving party need not prove its case, but must present some factual basis entitling it to judgment.   *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1019 (2001).

¶ 18     The construction of the provisions of an insurance policy is a question of law, subject to *de novo* review. *Illinois Famers Insurance Co. v. Marchwiany*, 222 Ill. 2d 472, 476 (2006). Insurance policies are subject to the same rules of construction applicable to other types of contracts. See *Continental Casualty Co. v. McDowell & Colantoni, Ltd.*, 282 Ill. App. 3d 236, 241 (1996). A court's primary objective is to ascertain and give effect to the intention of the parties as expressed in the agreement. *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill. 2d 384, 391 (1993). In performing that task, the court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). The words of a policy should be accorded their plain and ordinary meaning. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441 (1998). Where the provisions of a

policy are clear and unambiguous, they will be applied as written (*United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 4 (1981)) unless doing so would violate public policy (*Villicana*, 181 Ill. 2d at 442).

¶ 19    Lytle argues that the loss payable provision of the insurance contract is ambiguous and should be construed most strongly against Country Mutual, the party that prepared the contract. However, we find no ambiguity in the language of the instant policy of insurance. The contract indicates Lytle purchased dwelling coverage subject to Loss Settlement 1, which provides that replacement cost is paid in the following manner and circumstances:

"a.   We pay replacement cost unless paragraph b. applies. If a building or structure is rebuilt at a new location, replacement cost may not exceed the cost of restoring the property at the original location.

b.   If the applicable limit of liability for the damaged property is less than 80% of its replacement cost at the time of the loss, we will pay actual cash value.

c.   We will not pay more than actual cash value until actual repair or replacement is complete, unless the replacement cost is less than $2,500 and less than 5% of the applicable limit of liability. With respect to losses as a result of peril 4. Windstorm Or Hail we will not pay more than actual cash value until actual repair or replacement is complete, unless the replacement cost is less than $15,000.

d.   You may choose, at your election, to accept actual cash value instead of replacement cost. If you do so, you will have one year from the date of the loss to repair or replace the damaged property and request the difference between actual cash value and replacement cost.

e.   We will pay actual cash value for damage to wood fences."

¶ 20    Furthermore, concerning building ordinance coverage, the policy provided:

"a.   Under Dwelling, Coverage C and item 5. Building Additions And Alterations, below, we will pay for the increased costs you incur due to the enforcement of any ordinance or law that requires or regulates:

(1)   The construction, demolition, remodeling, renovation or repair of that part of a covered dwelling damaged by a Peril Insured Against;

(2)   The demolition and reconstruction of the undamaged part of a covered dwelling, when that dwelling must be totally demolished because of damage by a Peril Insured Against to another part of that dwelling; or

(3)   The remodeling, removal or replacement of the portion of the undamaged part of a covered dwelling necessary to complete the remodeling, repair or replacement of that part of the covered dwelling damaged by a Peril Insured Against.

This coverage provides additional insurance up to 10% of the stated applicable limit, but is not increased by Coverage EE or Coverage HH, if Coverage EE or Coverage HH is purchased.

b.   You may use all or part of this Building Ordinance coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c.   We do not cover:

(1)   The loss in value to any covered dwelling due to the requirements of any ordinance or law; or

(2)   The costs to comply with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants or fungus in or on any covered dwelling."

¶ 21   In addition, the policy contains the following express exclusions:

"A.   We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area or the loss arises from natural, man-made, or external forces, or occurs as a result of any combination of these

* * *

3.   Water Damage

Water Damage means loss from:

* * *

c.   Water or water-borne material, regardless of its source, below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

* * *

19.   Any of the following:

a.   Wear and tear, marring, deterioration;

* * *

f.    Settling, shrinking, bulging or expansion, including resultant

cracking, of bulkheads, pavements, patios, footings, foundations,

walls, floors, roofs or ceilings;"

¶ 22    We find no ambiguity in this contract language, and this court has construed similar

contract language and found the policy clear and unambiguous. *Saathoff v. Country Mutual*

*Insurance Co.,* 379 Ill. App. 3d 398, 404 (2008); *Higginbotham v. American Family Insurance*

*Co.*, 143 Ill. App. 3d 398, 400 (1986); *National Tea Co. v. Commerce & Industry Insurance Co.*,

119 Ill. App. 3d 195, 201 (1983). Accordingly, we conclude the trial court correctly interpreted the

clear language of the insurance policy as providing for replacement cost coverage only if actual

repairs were completed.

¶ 23    "The Replacement Cost has two components: the Actual Cash Value, which is the value of

the property at the time of loss, or an agreed or appraised value; and the Depreciation Holdback,

which is the cost of repairs that exceed the Actual Cash Value." *Novogroder Cos. v. Hartford Fire*

*Insurance Co.*, 528 Fed. App'x 644, 645 (7th Cir. 2013) (applying Illinois law). If the insured

repairs or replaces the damaged property, and if the actual cost of repairs exceeds the actual cash

value, then the insurer is obligated to reimburse the insured for the difference. *Id*.; accord *Paluszek*

*v. Safeco Insurance Co. of America*, 164 Ill. App. 3d 511, 516-17 (1987). Unless the insured has

actually suffered a pecuniary loss from repairing or replacing the damaged property, "the

insurance company's liability is limited to the actual cash value."   *Id*. at 517.

¶ 24    Here, it is undisputed that Lytle has been paid the actual cash value of the damaged

property at the time of the loss and has not repaired or replaced the property. Moreover, it is

undisputed that the policy contains a standard depreciation holdback loss settlement provision that

states Country Mutual will not pay more than actual cash value until the actual repair or

replacement is complete. Accordingly, Lytle is not entitled to reimbursement for the depreciation holdback because he did not incur that pecuniary loss.

¶ 25    Lytle also contends Country Mutual violated the policy by failing to comply with his demand for an appraisal. Lytle argues that he sought an appraisal over a disputed amount of a covered loss.

¶ 26    The policy's appraisal provision reads as follows:

> "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire, who shall be competent in the trade or skill necessary to assess the loss. If they cannot agree upon an umpire within 15 days, you or we may request that the choice of an umpire be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement between them to us, the amount agreed upon will set the amount of loss and be final. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will then be the amount of loss and be final.
>
> Each party will:
>
> 1.  Pay its own appraiser; and
>
> 2.  Bear the other expenses of the appraisal and umpire equally."

¶ 27    Contrary to Lytle's assertion on appeal, he presents this court with a *coverage* dispute rather than a dispute over the *amount* of a loss. Specifically, Lytle disputes whether certain costs associated with complying with building ordinances would be covered under his policy.

Consequently, Lytle was not entitled to an appraisal on the issue of insurance coverage or contract interpretation. See *Lundy v. Farmers Group, Inc.*, 322 Ill. App. 3d 214, 219 (2001) (the resolution of the issue of whether the defendant insurance company misrepresented the quality of repair parts it would cover under its policies fell outside the scope of an appraisal process and required the construction of the policy).

¶ 28    Furthermore, Lytle asks this court to determine the scope of his written appraisal request, but that document is missing from the record on appeal. The burden of providing a sufficient record on appeal rests with the appellant (*Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005)), and in the absence of a complete record, this court presumes that the order entered by the trial court was in conformity with the law and had a sufficient factual basis (*Moenning v. Union Pacific R.R. Co.*, 2012 IL App (1st) 101866, ¶ 38). Any doubts arising from the incompleteness of the record will be resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). According to the record, the trial court determined that the issue raised in Lytle's appraisal request was not subject to the appraisal provision. Based on the insufficient record on appeal concerning this issue, we conclude that the trial court's decision concerning Lytle's appraisal demand conformed with the law and had a sufficient factual basis.

¶ 29    To the extent that Lytle appears to ask this court to determine the rights of the parties regarding the policy's building ordinance coverage, we find that Lytle has forfeited review of this issue by failing to raise it in the trial court. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) (issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal).

¶ 30    Lytle also asserts that Country Mutual had a duty to meet with representatives from the village to learn firsthand what ordinances the village might or might not enforce. We disagree;

Lytle cites no relevant authority to support the proposition that Country Mutual had a duty to act as an agent for Lytle in making a claim. Moreover, the correspondence in the record establishes that Lytle's own insurance adjuster already met with the village representatives and possessed knowledge about the necessary building code upgrades, and the parties do not dispute that Lytle never provided Country Mutual with any information delineating any necessary building code upgrades. Instead, after Lytle accepted the actual cash value payments, he asked Country Mutual to cover the difference between the actual cash value and replacement cost despite never having repaired or replaced the property and, thus, never incurring those costs. The insurance policy at issue provides coverage only for incurred costs, and the equitable principles of waiver and estoppel may not be used to create or extend coverage where none exists. *Schuster v. Occidental Fire & Casualty Co. of North America*, 2015 IL App (1st) 140718, ¶ 29.

¶ 31    Finally, Lytle was not entitled to damages pursuant to section 155 of the Insurance Code because his bad faith claim against Country Mutual was dependent on the success of his breach of contract action, and he did not succeed in that action on the policy. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 524 (1996); *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, ¶ 40.

¶ 32    We affirm the judgment of the circuit court granting Country Mutual's motion for summary judgment.

¶ 33    Affirmed.