In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 18-3443 & 18-3530

ESSEX INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

BLUE MOON LOFTS CONDOMINIUM ASSOCIATION and
THE STRUCTURAL SHOP, LTD.,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-2806 — **John Z. Lee**, *Judge.*

ARGUED APRIL 16, 2019 — DECIDED JUNE 27, 2019

Before EASTERBROOK, KANNE, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* An Illinois state court entered a
$1,356,435 judgment against The Structural Shop in 2009, and
now TSS wants its insurer, Essex Insurance Company, to pay
for it. The terms of TSS's insurance policy do not cover this
claim, however. The policy covers only claims first made
against TSS between May 2012 and May 2013, and the lawsuit
giving rise to the Illinois court's judgment was filed against

TSS in 2002. Recognizing this reality, TSS has resorted to the common law doctrine of estoppel. Illinois law estops Essex from denying coverage only if the insurer misled TSS into believing it would cover the judgment, TSS reasonably relied on Essex's misleading statement or act, and TSS suffered prejudice. The district court determined that TSS suffered no prejudice and declined to apply estoppel. The district court also rejected TSS's alternative theories of recovery. Seeing no error in the district court's rulings, we affirm.

## I

### A

In 2002 the Blue Moon Lofts Condominium Association filed a complaint against TSS in an Illinois state court seeking damages arising out of TSS's allegedly defective design and construction of a building. The lawsuit began as it should have—with Blue Moon, through a process server, providing notice of the action to TSS's registered agent, Thomas Donohoe, on November 7, 2002. TSS never responded to the notice or appeared in the state court action to defend itself, leading in May 2003 to the state court declaring the company in default. Years later, in 2009, the state court entered a default judgment and set the damages amount at $1,356,435, tacking on costs too.

Essex knew nothing of the state court litigation that transpired between 2002 and 2009. For good reason: Essex did not insure TSS during that period and entered the picture many years later when it sold TSS an insurance policy for claims "first made" against TSS from May 2012 to May 2013. The policy defined "first made" to mean the time when TSS received either a "written demand for money damages" or "the service

of suit or institution of arbitration proceedings against the Insured."

The parties agree that Blue Moon's 2002 claim arose outside the policy period. But universal agreement on this point is only a recent development. In the years leading to this dispute, both TSS and Essex labored under the mistaken belief that Blue Moon failed back in 2002 to serve TSS with notice of the lawsuit. Against that mistaken understanding, Blue Moon and TSS further believed that Blue Moon first made a claim under the policy in 2012, when it approached TSS to collect on the default judgment—timing that would have brought Blue Moon's claim within the terms of the May 2012 to May 2013 policy.

This confusion set the stage for this dispute. The upshot of TSS's position is that, based on Essex's conduct during 2012 and beyond while helping TSS defend against Blue Moon's claim, principles of fairness and equity demand holding Essex liable for satisfying the default judgment entered against TSS by the Illinois court. So we need to look closer at Essex's conduct during this period.

B

TSS first became aware of the default judgment in August 2012, when Blue Moon contacted Douglas Palandech, an attorney and TSS's registered agent, seeking to collect. TSS expressed surprise at the development, believing the company never received notice of Blue Moon's lawsuit. Proving as much became important, for Blue Moon's failure to provide notice back in 2002 would have supplied sufficient grounds to vacate the default judgment, and—even more critically for TSS—meant that Blue Moon had first made its claim against

TSS in August 2012 and thus inside the policy's May 2012 to May 2013 coverage period.

TSS retained Palandech as outside counsel to defend the company against Blue Moon's claim and attempts to collect the default judgment. Palandech's first order of business was asking Blue Moon to supply proof of service. For a time, these requests went unanswered. Palandech's review of the state court's docket also uncovered no record of service.

Ken Veach, TSS's principal, reached a similar dead end. His search of company records revealed no indication of any lawsuit by Blue Moon. Veach also contacted TSS's insurance broker, Melissa Roberts, and she too stated that she had no record of Blue Moon's 2002 complaint against TSS.

With all leads coming up empty, TSS concluded—incorrectly as it would turn out—that the company had not received notice of the 2002 lawsuit. This conclusion led TSS, with Palandech's assistance, to petition in the state court to vacate the default judgment. TSS supported its petition with two affidavits, one from Veach swearing that Thomas Donohoe had never acted as TSS's registered agent, and another from Palandech explaining that his due diligence found no proof of service. The court granted the motion and vacated the default judgment.

It was then—after the Illinois court vacated the default judgment—that TSS informed Essex of these developments and Blue Moon's claim. Essex reacted by accepting TSS's account that Blue Moon had brought its claim to the company's attention for the first time in August 2012. Of course, later events would prove this false. But Essex, not yet aware that Blue Moon properly served TSS in 2002, considered the

dispute to fit within the terms of the policy covering claims first made against TSS between May 2012 and May 2013. This meant that Essex had a duty to defend TSS against Blue Moon's claim.

Essex acted on its duty to defend by hiring a claims servicing company by the name of Markel to coordinate and participate on behalf of Essex in TSS's defense. Markel then charted a passive course, leaving TSS's outside counsel, Palandech, to call the litigation shots and otherwise lead TSS's defense efforts. Markel, in short, mostly sat on the sidelines as Palandech managed the defense and made strategic recommendations to TSS.

The first inkling that something was wrong came in February 2013. It was then that Blue Moon's counsel provided Palandech an invoice from Tri-County Investigations, the special process server Blue Moon hired to serve TSS in 2002. The invoice showed that Blue Moon had paid Tri-County $60 for serving TSS on November 7, 2002.

This development did little to change Palandech's perspective on the matter, though. For example, in an email to TSS (with a copy to Markel), one of Palandech's colleagues expressed the view that the unverified invoice was a flimsy basis on which to conclude service occurred. A month later, in March 2013, Palandech learned that Blue Moon remained in the process of trying to learn whether service of process in fact had occurred. Blue Moon indicated that, if the answer turned out to be yes, the Illinois state court may well revisit its prior order vacating the default judgment. Another attorney at Palandech's law firm so informed TSS and Markel.

Part and parcel of his view that Blue Moon had never properly served TSS in 2002, Palandech advised TSS to reject Blue Moon's May 2014 offer to settle the dispute for $25,000 and instead to file a motion to dismiss Blue Moon's complaint. Ken Veach agreed, stating in an e-mail that he was adamantly opposed to any settlement. Markel's representative also agreed with Palandech's advice.

Everything changed for TSS on July 29, 2014, when Blue Moon's counsel sent Palandech a copy of the special process server's affidavit—clear evidence that Blue Moon had in fact served notice of the lawsuit on Thomas Donohoe in 2002. Blue Moon's counsel added that records from the Illinois Secretary of State showed that Donohoe was TSS's registered agent in 2002.

Bad then went to worse for TSS. In August 2014, Blue Moon filed a motion to reinstate the default judgment, and, in November 2014, the court granted the motion. Palandech advised TSS to petition for relief from the judgment. TSS agreed and followed Palandech's recommendation, but to no avail, as the state court denied the company's petition on March 5, 2015. Several days later Veach advised Palandech that TSS had retained a bankruptcy attorney to advise the company of its options for satisfying the default judgment.

Essex reacted to these developments in two ways. First, on March 26, 2015, Essex sent TSS a reservation of rights. The letter informed TSS that Essex would continue to defend the company through the appeal of the state court's order denying relief from the final judgment while adding that Essex was denying coverage because the events showed that Blue Moon first made its claim in 2002 and thus well before the period covered by TSS's policy. Second, Essex decided to become

more active in managing TSS's defense. It did so by hiring a new law firm to handle TSS's pending appeal.

Essex's decision to become more active proved futile. TSS mooted the decision by taking matters entirely into its own hands and—without any involvement by Essex—settling with Blue Moon. The settlement required TSS not only to pay Blue Moon $550,000, but also to assign Blue Moon any rights of indemnification from Essex.

The case then entered federal court. In March 2015, Essex brought this action seeking a declaratory judgment that it had no obligation to indemnify Blue Moon (now the assignee of TSS) for the cost of the default judgment. Blue Moon responded with a counterclaim seeking a declaratory judgment to the contrary, contending that Essex was estopped from denying coverage, waived its right to assert coverage defenses, and was liable for the default judgment because it acted in bad faith by refusing to pursue a settlement with Blue Moon. The district court disagreed on all fronts and entered summary judgment for Essex.

## II

### A

We begin, as the district court did, with estoppel. Blue Moon (as TSS's assignee) argues that the Illinois common law doctrine of estoppel requires Essex to pay for the judgment.

Estoppel often arises in cases involving close calls over whether an insurance policy covers a particular claim brought against an insured. In those circumstances, the insurer has a duty to defend the insured because the latter has received a claim alleging facts within or potentially within the coverage of the applicable policy. See *Maryland Cas. Co. v. Peppers*, 64

Ill.2d 187, 193 (1976). When an insurer steps in to fulfill its obligation to defend by assuming the defense against such a complaint, it must do so under a reservation of rights—or else risk later being estopped from raising policy defenses to coverage. See *Standard Mut. Ins. Co. v. Lay*, 2013 IL 114617, ¶ 19 ("Generally, where a complaint against an insured alleges facts within or potentially within the coverage of the insurance policy, and when the insurer takes the position that the policy does not cover the complaint, the insurer must: (1) defend the suit under a reservation of rights; or (2) seek a declaratory judgment that there is no coverage.").

This basic principle of estoppel that often bars an insurer from raising a policy defense to coverage—commonly called "general" estoppel—has limits that bar its application here. See *Nationwide Mut. Ins. Co. v. Filos*, 285 Ill. App. 3d 528, 536 (1st Dist. 1996) ("Illinois courts have followed the general rule that the doctrine of estoppel cannot be used to create primary liability or to increase coverage provided under an insurance policy."). Foremost, "when the policy and the complaint are compared, [and] there was clearly no coverage or potential for coverage," general estoppel does not apply. *Employers Ins. of Wausau v. Ehlco Liquidating Tr.*, 186 Ill.2d 127, 151 (1999). Where, as here, everyone agrees that the claim fell outside the coverage period, general estoppel provides no refuge for Blue Moon and TSS.

But our inquiry cannot end there because Illinois law recognizes a second form of estoppel—sometimes called equitable estoppel—that can force an insurer to do what general estoppel cannot: pay for a claim that falls outside the terms of the insurance policy. See *Illinois Sch. Dist. Agency v. Pac. Ins.*

*Co.*, 471 F.3d 714, 719 (7th Cir. 2006); see also *Peppers*, 64 Ill.2d at 195 (describing the nature of equitable estoppel).

Illinois law requires Blue Moon to make a threefold showing for equitable estoppel to apply. Blue Moon first needs to show that Essex misled TSS into thinking it would pay for the default judgment; second, that TSS reasonably relied on Essex's misleading act or statement; and third, that prejudice resulted to TSS. See *Filos*, 285 Ill. App. 3d at 536; see also *Standard Mut. Ins. Co.*, 2013 IL 114617, ¶ 19; *Peppers*, 64 Ill.2d at 195–96.

The district court resolved this dispute exclusively on the prejudice prong. So we, too, start there, and the first step is to recognize that, in this insurance law context, the word "prejudice" is a term of art with a limited meaning. When Illinois law asks whether Essex acted in a way that prejudiced TSS, the inquiry is focused on only one question: whether Essex, as part of defending TSS against Blue Moon's claim, took control of TSS's litigation defense away from TSS. "Prejudice will not be conclusively presumed from the [insurer's] mere entry of appearance and assumption of the defense." *Peppers*, 64 Ill.2d at 196. "If, however, by the insurer's assumption of the defense the insured has been induced to surrender his right to control his own defense, he has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage." *Id.*

As the assignee of any claim TSS had against Essex, Blue Moon needed to prove prejudice by "clear, concise, and unequivocal evidence," see *Filos*, 285 Ill. App. 3d at 536, with the inquiry turning on whether Essex's "assumption of the defense induce[d] [TSS] to surrender [its] right to control [its] own defense," *Standard Mut. Ins. Co.*, 2013 IL 114617, ¶ 19. The

question, Illinois law makes plain, is one of control, not whether the insured could have obtained a more favorable outcome for itself. See *Home Ins. Co. v. Three I Truck Line, Inc.*, 95 F. Supp. 2d 901, 906 (N.D. Ill. 2000) (citing *Peppers*, 64 Ill.2d at 196).

The district court got this right when it concluded Essex did not act to prejudice TSS. The reason is because, in the events leading to its decision to settle with Blue Moon, TSS never lost control of its defense. More specifically, it was TSS's outside counsel, Palandech, and not Essex, that controlled the litigation strategy from the start. Even before Essex became aware of Blue Moon's claim, TSS hired Palandech to defend against the claim, and from then on he steered the company's defense. Palandech communicated directly with Blue Moon's counsel, crafted TSS's litigation strategy, and made recommendations to TSS such as whether to accept Blue Moon's settlement offer. Even after TSS informed Essex of Blue Moon's claim, Palandech remained in control and acted to protect TSS's interests by working to prove that service never occurred as part of resisting reinstatement of the default judgment. Absent from the record is evidence demonstrating that Essex did anything more than passively monitor TSS's defense by allowing the company's outside counsel, Palandech, to control the litigation.

Our analysis aligns with observations we made in another insurance case raising questions about the doctrine of estoppel under Illinois law. See *Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178, 1182–83 (7th Cir. 1994). There, as here, we construed Illinois law and explained that equitable estoppel did not apply because the insured's counsel protected its interests and monitored the progress of the litigation, and neither the insured

nor its counsel ever complained about the litigation strategy. See *id*.

Blue Moon disagrees by pointing us to the fact that, in March 2015, Essex replaced Palandech with different counsel to pursue an appeal from the default judgment. But this observation overlooks a basic underpinning of estoppel—that the doctrine applies where an insurer assumes control of the defense without reserving its right to deny coverage. By the time Essex replaced Palandech as defense counsel, Essex had reserved its right to deny coverage for the claim upon learning that Blue Moon properly served notice on TSS in 2002. Essex's affirmative act to reserve its rights upon learning that service occurred in 2002 defeats the application of estoppel based on Essex's subsequent conduct. See *Filos*, 285 Ill. App. 3d at 536 (explaining that equitable estoppel applies only where an insurer assumes control over the insured's defense without a reservation of rights while "actually or constructively aware of the facts or circumstances indicating noncoverage"). And, in any event, even if Essex's conduct after reserving its rights mattered to our prejudice analysis, the fact that TSS settled with Blue Moon on the sly—without Essex's involvement—undermines any notion that TSS had surrendered control of the defense to Essex.

On this record, we agree with the district court that TSS experienced no prejudice. But there is also reason to think that other required elements of equitable estoppel are lacking. For example, the record suggests that TSS knew all along that, if Blue Moon had properly served notice in 2002, then the company's insurance policy with Essex would not cover the claim. That fact makes it hard to see how TSS could have reasonably

relied on Essex's conduct as part of somehow assuming Essex would pay for the judgment.

In the end, though, the absence of prejudice is enough for us to conclude that estoppel is not appropriate here. The district court properly entered summary judgment for Essex on this basis.

B

Blue Moon next argues that, even if estoppel does not carry the day, Essex waived its defense against coverage. "[A]n insurer may waive a *policy defense* by continuing under a policy when it knows, or in the exercise of ordinary diligence, could have known the facts in question giving rise to the defense." *Kenilworth Ins. Co. v. McDougal*, 20 Ill. App. 3d 615, 620 (2d Dist. 1974) (emphasis added). Blue Moon's waiver argument fails because Essex is not merely asserting a policy defense. Examples of waivable policy defenses include an insured's failure to timely notify the insurer of a claim, see *State Farm Mut. Auto. Ins. Co. v. Gray*, 211 Ill. App. 3d 617, 621 (1st Dist. 1991), or an insured's failure to comply with a policy's requirement to submit a sworn statement 30 days after an accident, see *McMahon v. Coronet Ins. Co.*, 6 Ill. App. 3d 704, 709 (1st Dist. 1972).

What we have here—a request for coverage relating to a claim arising in a period that TSS and Essex never contemplated would be covered—is altogether different from the assertion of policy defense. Unlike equitable estoppel, waiver "may not be used to create or extend coverage where none exists." *Lytle v. Country Mut. Ins. Co.*, 2015 IL App (1st) 142169, ¶ 30. Everyone agrees that the policy's terms did not cover

Blue Moon's 2002 claim. That fact defeats Blue Moon's reliance on a theory of waiver.

### C

We close with Blue Moon's contention that Essex refused in bad faith to settle the state court litigation between TSS and Blue Moon and therefore must pay for the default judgment. An insurer assumes a duty to settle only in circumstances where it assumes exclusive control over the insured's defense. See *Cramer v. Ins. Exchange Agency*, 174 Ill.2d 513, 525 (1996); see also *Transport Ins. Co., Inc. v. Post Express Co., Inc.*, 138 F.3d 1189, 1193 (7th Cir. 1998). Having already explained that Essex never assumed control of TSS's defense against Blue Moon's claim, we need not say more to dispense with this argument. In the absence of Essex assuming exclusive control, Essex never incurred—let alone breached in bad faith—a duty to settle.

For these reasons, we AFFIRM.