**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT
_____

CANYON SPRINGS AT SOARING
EAGLES TOWNHOME OWNERS
ASSOCIATION, INC., a Colorado
corporation,

      Plaintiff - Appellant,

v.

COUNTRY MUTUAL INSURANCE
COMPANY,

      Defendant - Appellee.

No. 19-1386
(D.C. No. 1:18-CV-01811-WJM-KMT)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE** and **BACHARACH**, Circuit Judges.
_____

This is an insurance dispute premised on diversity jurisdiction. The insured,

Canyon Springs at Soaring Eagles Townhome Owners Association, Inc. ("Canyon

Springs"), appeals from a district court order that entered summary judgment in favor of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the insurer, Country Mutual Insurance Company ("Country Mutual").  Exercising

appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

In June 2016, a hailstorm damaged thirty-one townhomes managed by Canyon

Springs.  Country Mutual estimated that total replacement costs for damage to the roofs,

siding, doors, and windows would be $1,031,295.13 ("Comprehensive Estimate").  Of

that figure, the estimated cost for repairing the roofs was $758,634.45.  Canyon Springs

repaired only the roofs, spending $761,911.74.  Both the estimated and the actual costs of

the roof repairs came in under the insurance policy's deductible of $789,297.12.

Country Mutual "issued payment for the actual cash value of the damaged

property."  Aplt. App., Vol. I at 36.  But when Country Mutual refused Canyon Springs'

demand to "release recoverable depreciation on the roofing portion of the claim," *id.* at

16, Canyon Springs sued Country Mutual in federal district court for breach of contract,

bad faith, and unreasonable delay/denial of insurance benefits.  According to Canyon

Springs, its "requested payment for the holdback depreciation applicable to the roofs . . .

total[e]d $128,907.25."  *Id.* at 27.[1]

---

[1]  The term "holdback depreciation" generally refers to the cost of repairs that exceed the property's actual cash value at the time of the loss.  *See, e.g.*, *Lytle v. Country Mut. Ins. Co.*, 41 N.E.3d 657, 662 (Ill. App. 2015).  Canyon Springs calculates holdback depreciation by first subtracting the deductible from the Comprehensive Estimate, arriving at a figure of $241,998.01.  *See* Aplt. Opening Br. at 15.  Canyon Springs then identifies Country Mutual's total "actual cash value" payment as $61,675.08, which, according to Canyon Springs, "leav[es] the balance as solely holdback depreciation."  *Id.* But subtracting that "actual cash value" payment from $241,998.01 does not result in "the depreciation amount for the roofs ($128,907.25)" that Canyon Springs claims.  *Id.* Nevertheless, it is unnecessary for us to determine precisely how Canyon Springs

Canyon Springs filed a motion for partial summary judgment on its breach of contract claim, arguing that "because [it] actually repaired the damaged roofs, Country Mutual [could] no longer maintain its deduction of depreciation for those repairs." *Id.* at 37. Country Mutual filed a cross-motion for summary judgment on all of Canyon Springs' claims, arguing that "[b]ecause [Canyon Springs] did not complete repairs for non-roof items, and because the actual cost of repairs for the roofs w[as] less than the deductibles, no additional amounts [were] owed." *Id.* at 272. The district court agreed with Country Mutual and entered summary judgment in its favor.

## DISCUSSION

We review de novo the district court's grant of summary judgment. *Knopf v. Williams*, 884 F.3d 939, 946 (10th Cir. 2018). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

This case turns on the interpretation of the insurance policy's Replacement Cost endorsement. In relevant part, that endorsement provides that Country Mutual

> will determine the value of Covered Property . . . [a]t replacement cost without deduction for depreciation, subject to the following:
> (a)  [Country Mutual] will pay the cost to repair or replace, **after application of the deductible(s)** and without deduction for depreciation, but no more than the least of . . . .
>    (i)  The Limit of Insurance . . . ;
>    (ii)  The cost to replace . . . with other [similar] property . . . ; or
>    (iii)  The amount that [the insured] actually spend[s] that is necessary to repair or replace the . . . property.
> . . .

calculates its $128,907.25 figure, given our conclusion that no holdback depreciation is available.

3

. . .

    (c)      [Country Mutual] will not pay on a replacement cost basis for any loss or damage:

        (i)      Until the lost or damaged property is actually repaired or replaced; and

        (ii)     Unless the repairs or replacements are made as soon as reasonably possible after the loss or damage.

Aplt. App., Vol. I at 135-36 (emphasis added; internal quotation marks omitted).

Like the district court, we conclude that the Replacement Cost endorsement is clear in how it calculates Country Mutual's liability for loss or damage. *See Lincoln Gen. Ins. Co. v. Bailey*, 224 P.3d 336, 339 (Colo. App. 2009) ("[I]f insurance policies are clear and unambiguous, they require no construction or interpretation and are to be enforced as written."), *aff'd*, 255 P.3d 1039 (Colo. 2011). Specifically, the endorsement starts with the "cost to repair or replace" and then applies the deductible but not depreciation. Here, the $761,911.74 repair/replacement cost minus the $789,297.12 deductible results in a negative number.[2] In other words, the repair/replacement cost did not exceed the deductible. Thus, the calculation ends, as there is no compensable repair/replacement cost. *See* Aplt. App., Vol. I at 133 (Wind or Hail endorsement providing that Country Mutual "will not pay for loss or damage until the amount of loss or damage exceeds the Deductibles").

Canyon Springs argues, however, that the cost of repairing the roofs is not relevant. It maintains that it should prevail because subtracting the deductible from the Comprehensive Estimate ($1,031,295.13) results in a positive number from which to

---

[2] Even if the estimated cost to repair just the roofs is used ($758,634.45), the result upon applying the deductible is negative.

4

derive holdback depreciation for the roofs. But Canyon Springs does not identify language in the policy that supports its position. Indeed, the Replacement Cost endorsement uses "actual[ ]" repairs/replacement to both trigger its obligation to pay on a replacement-cost basis and to limit how much it pays. *Id.* at 135-36. Clearly, the Comprehensive Estimate includes roof and non-roof items, and it is not based on any actual repairs or replacements.

We conclude, based on the unambiguous terms of the insurance policy, that Country Mutual is not liable for holdback depreciation. *Cf. Lytle v. Country Mut. Ins. Co.*, 41 N.E.3d 657, 662 (Ill. App. 2015) (holding that the insured was "not entitled to reimbursement for the depreciation holdback because" there was no "actual[ ] . . . pecuniary loss"). Summary judgment is therefore appropriate on all of Canyon Springs' claims for relief.

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Timothy M. Tymkovich
Chief Judge
